

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7213 | **DATE** | 8/23/2002 |
| **CASE TITLE** | Juan A. Dominguez et al. Vs. Alliance Mortgage Co. Et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

| (1)  | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2)  | ☐ | Brief in support of motion due _____. |
| (3)  | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4)  | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5)  | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6)  | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7)  | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8)  | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9)  | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Enter Memorandum Opinion and Order. We grant defendants' motion for summary judgment with respect to counts I and II, and dismiss the state law claims for lack of subject matter jurisdiction. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 27 2002 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| WAH | courtroom deputy's initials | 02 AUG 26 AM 9:15 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUAN A. DOMINGUEZ, NOEL )
GARCIA, MARIA J. HERNANDEZ )
and ANA K. DOMINGUEZ, )
)
Plaintiffs, )
)
vs. ) No. 01 C 7213
)
ALLIANCE MORTGAGE COMPANY )
and AMERIHOME MORTGAGE CO., )
LLC, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Juan A. Dominguez, Noel Garcia, Maria J. Hernandez and Ana K. Dominguez bring suit against defendants Alliance Mortgage Company (Alliance) and Amerihome Mortgage Company, LLC (Amerihome), alleging that defendants' fee structure violates the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2601 *et seq.* and its implementing regulations, 24 C.F.R. §3500.1 *et seq.* Plaintiffs also assert state law claims against Amerihome for breach of fiduciary duty, against Alliance for inducing Amerihome's breach, and against both defendants for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/2. Defendants move for summary judgment. For the following reasons, defendants' motion is granted.

## BACKGROUND

When plaintiffs sought a mortgage, their real estate agent referred them to Amerihome, a mortgage broker, who arranged for an FHA-backed loan from Alliance. The total loan

amount was $152,112.00. Plaintiffs paid Amerihome a "loan origination fee" of $1,498.65 and a "loan discount" of $380.28 in connection with the loan. Amerihome also received payment from Alliance, in the form of a $1,901.40 "yield spread premium."

A yield spread premium (YSP) is a payment by a lender, such as Alliance, to a mortgage broker, such as Amerihome, apart from any fees paid by the borrower. The lender establishes a par interest rate, at which it will make or purchase a loan from a class of borrowers, and informs brokers of this rate by disseminating rate sheets to the brokers on a regular basis. If the broker secures a borrower at a higher rate, the lender pays a YSP linked to the increase in the rate. The formula for computing the premium is included in the rate sheets.

## DISCUSSION

We may only grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We must also draw all inferences and view all admissible evidence in the light most favorable to plaintiffs. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This does not mean there must be absolutely no evidence supporting the non-moving party, but, rather, there is not enough to support a reasonable jury verdict. *Id.* at 248.

Plaintiffs advance two legal theories as to how defendants' practices violate RESPA. First, they maintain that HUD regulations impose a hard cap, 1% of the loan amount, on broker compensation, and that when combined, the origination fee, discount fee and YSP exceed this cap. And second, they assert that the yield spread premium is an illegal kickback or referral fee.

### The 1% Cap Theory

HUD regulations limit the fees that mortgage brokers can charge borrowers applying for FHA-insured loans:

> 203.27 Charges, fees or discounts.
>
>> (a) The mortgagee may collect from the mortgagor the following charges, fees, or discounts: ...
>
> (2) A charge to compensate the mortgagee for expenses incurred in originating and closing the loan, the charge not to exceed;
>
>> (i) $20 dollars or one percent of the original principal of the mortgage. ...
>
> (3) Reasonable and customary amounts, but not more than the amount actually paid by the mortgagee, for any of the following items:
>
>> (i) Recording fees and recording taxes or other charges incident to recordation;
>>
>> (ii) Credit report;
>>
>> (iii) Survey, if required by mortgagee or mortgagor;
>>
>> (iv) Title examination; title insurance, if any;
>>
>> (v) Fees paid to an appraiser or inspector approved by the Commissioner for the appraisal and inspection, if required, of the property. ...
>>
>> (vi) Such other reasonable and customary charges as may be authorized by the Commissioner.

24 C.F.R. §203.27(a). Origination fees in particular are capped at 1% of the original loan principal. 24 C.F.R. §203.27(a)(2).

Plaintiffs do not dispute that the $1,498.65 origination fee was less than 1% of the $152,112.00 original principal amount. Instead, they argue that the regulation limits the

broker's total compensation – from any source – to 1%, and that we must aggregate the discount fee and YSP with the origination fee to assess the legality of the broker's compensation. Taken together, the origination fees, loan discount and YSP total approximately 2.5% of the original principal amount. Defendants maintain that discount fees and YSP's do not count toward the 1% limit imposed by §203.27(a)(2)(i).

Many courts have already addressed this precise question and the overwhelming weight of authority, including from this district, rejects plaintiffs' position. *See, e.g.*, Bjustrom v. Trust One Mortgage, 178 F. Supp.2d. 1183 (W.D. Wash. 2001); Vargas v. Universal Mortgage Corp., 2001 WL 1545874 at *4 (N.D. Ill. Nov. 29, 2001) (Zagel, J.); Watson v. CBSK Financial Group, 2002 WL 598521 at *4-5 (N.D. Ill. Apr. 18, 2002) (Nordberg, J); Krzalic v. American Home Mortgage Corp., 2002 WL 924618 at *2 (N.D. Ill. May 3. 2002) (Kennelly, J.). Plaintiffs concede this and ask us to reject these authorities as unpersuasive in light of the statutory and regulatory text. We disagree.

As outlined above, §203.27(a) lists several different types of permissible fees. Origination fees, described in (a)(2), are but one. Brokers may also charge for things such as recording fees, recording taxes, credit reports, surveys, title examination and title insurance (§203.27(a)(3)), and discount fees are expressly permitted (§203.27(a)(4)). The Bjustrom court undertook a thorough historical and structural analysis and concluded that

> [t]he fact that these items are organized in a consecutive list of permitted payments indicates that they may all be charged. There is no indication in the language or structure of the statute to suggest that subcategory (2) subsumes all the other parallel, numbered subcategories. Consequently, [borrowers] may be charged an appraisal fee, a tax service fee, as well as other fees authorized by 24 C.F.R. §203.27(a)(3), (4) and (5) *in addition to* the 1% charge allowed by subsection (a)(2).

178 F. Supp.2d at 1189 (emphasis in original).[1] We agree. The regulation addresses each type of fee separately and does not impose a hard cap on total fees. Because the discount fee is authorized separately from the origination fee, it does not count toward the 1% limit.

We also agree with Bjustrom's analysis with respect to the YSP. Amerihome collected the YSP from Alliance, not from plaintiffs. Borrowers may ultimately bear this cost indirectly, in the form of higher interest payments, but that is not prohibited. Section 203.27 focuses on fees paid up-front to originate and close the loan. Interest payments are regulated separately by §203.20(a). HUD clearly accepts this tradeoff between lower closing fees and higher interest rates, at least where the borrower deals directly with the lender. *See* Deregulation of Mortgagor Income Requirements, 54 Fed. Reg. 38646, 38646 (Sept. 20, 1989) ("[W]hile the loan origination fee cap may be set below the cost of providing loan origination services, the shortfall is easily recovered by charging higher interest rates."). There is no reason to treat mortgage brokers any differently. This is consistent with the statute's purpose of fostering home ownership by allowing borrowers to effectively finance their closing costs. HUD's policy statements and its practice of routinely approving loans that include a YSP exceeding 1% also support this interpretation. We agree with the litany of cases holding that the 1% limit on origination fees only applies to fees directly collected from the borrower, not indirectly collected through interest payments.

## The Kickback/Referral Fee Theory

Plaintiffs also contend that YSPs are nothing more than kickbacks to brokers to induce referral of above-market loans. RESPA prohibits lenders from paying referral fees or

---

[1] Bjustrom sets forth its reasoning in substantial detail. Because we completely agree with that analysis, we will not repeat the full discussion here.

kickbacks to brokers.

> No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

RESPA §8(a), 12 U.S.C. §2607(a). But RESPA also exempts certain payments from being considered referral fees :

> Nothing in this section shall be construed as prohibiting (1) the payment of a fee ... (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, (2) the payment to any person of a bona fide salary or compensation or other payments for goods or facilities actually furnished or for services actually performed.

RESPA §8(c), 12 U.S.C. §2607(c). The question is whether YSP's fall within the §8(c) safe harbor.

HUD and the courts have had an ongoing debate over the proper standard for assessing YSPs' legality. The Eleventh Circuit prescribed a three-part test and found that YSPs were prohibited because they were "(1) a payment of a thing of value is (2) made pursuant to an agreement to refer settlement business and (3) referral actually occurs." Culpepper v. Inland Mortgage Corp. (Culpepper I), 132 F.3d 692 (11th Cir. 1998). Shortly thereafter, Congress asked HUD to clarify its position on YSPs. HUD responded with a policy statement that YSPs were neither legal nor illegal *per se*:

> [T]he first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid. The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker does not by itself make the payment legal. The second question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

> In applying this test, HUD believes that total compensation should be

> scrutinized to assure that it is reasonably related to goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. Total compensation to a broker includes direct origination and other fees paid by the borrower, indirect fees, including those that are derived from the interest rate paid by the borrower, or a combination of some or all. The Departments consider that higher interest rates alone cannot justify higher total fees to mortgage brokers. All fees paid will be scrutinized as a part of total compensation to determine that total compensation is reasonably related to the goods or facilities actually furnished or services actually performed. HUD believes that total compensation should be carefully considered in relation to price structures and practices in similar transactions and in similar markets.

Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10080, 10084 (Mar. 1, 1999) (HUD 1999 Policy Statement). This amounts to a two-part test: (1) whether the broker offered compensable goods or services; and (2) whether the broker's total compensation was reasonably related to the goods or services provided.

There is some disagreement, however, over how to apply this test. The Eleventh Circuit focused in on the word "for," as in "payment ... for services." It imputed that the broker must establish a direct nexus between any compensation it received and the services it provided. Because the amount of the YSP was computed based on a rate sheet and not tied directly to the broker's services, the court concluded it was really a referral fee. Culpepper v. Irwin Mortgage Corp. (Culpepper III), 253 F.3d 1324, 1329 (11th Cir. 2001). HUD responded with another policy statement, further elucidating its position on YSPs:

> It is HUD's position that neither Section 8(a) of RESPA nor the 1999 Statement of Policy supports the conclusion that a yield spread premium can be presumed to be a referral fee based solely upon the fact that the lender pays the broker a yield spread premium that is based upon a rate sheet, or because the lender does not have specific knowledge of what services the broker has performed. ... Whether or not a yield spread premium is legal or illegal cannot be determined by the use of a rate sheet, but by how HUD's test applies to the transaction involved.

Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53052, 53055 (Oct. 11, 2001) (HUD 2001 Policy Statement). Two other circuits have taken up this question since the HUD 2001 Policy Statement, both rejecting Culpepper III's nexus requirement. So long as the broker provided any compensable services, we go immediately to the reasonableness prong. *See* Glover v. Standard Federal Bank, 283 F.3d 953 (8th Cir. 2002); Schuetz v. Banc One Mortgage Corp., 292 F.3d 1004 (9th Cir. 2002). The Eleventh Circuit has not revisited this issue since the HUD 2001 Policy Statement.

We must also consider the degree of deference we should give to HUD's policy statements. Plaintiffs argue that we need not defer to HUD's policy statements because they were not the product of notice and comment rulemaking. We disagree. Glover and Schuetz both gave strong deference to HUD, albeit for slightly different reasons. The Ninth Circuit applied Chevron[2] deference because RESPA specifically authorized HUD to interpret the statute, the policy statements were published in the Federal Register and Congress' directive that HUD issue a statement within 90 days appeared to be the only reason for foregoing formal notice and comment procedures. Schuetz, 292 F.3d at 1012, *quoting* Barnhart v. Walton, – U.S. –, 122 S.Ct. 1265 (2002) ("[T]he fact that the Agency previously reached its interpretation through means less formal than 'notice and comment' rulemaking does not automatically deprive that interpretation of the judicial deference otherwise its due."). The Eighth Circuit noted that HUD's formal regulation, 24 C.F.R. §3500.14(b), merely repeated RESPA's

---

[2]Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837 (1984).

ambiguous language. Policy statements interpreting an agency's own ambiguous regulation are entitled to controlling deference unless "plainly erroneous or inconsistent with the regulation." *See* Glover, 283 F.3d at 962, *citing* Auer v. Robbins, 519 U.S. 452, 461 (1997) and Christensen v. Harris County, 529 U.S. 576 587 (2000). But even if lesser deference were appropriate, "HUD's Policy Statements in this instance pack sufficient power to persuade given HUD's specialized mission, experience and broad investigation into the consumer lending market." *Id.*, *citing* Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). We agree with Glover that the HUD 2001 Policy Statement is entitled to deference as an agency's interpretation of its own ambiguous regulation. It is controlling unless is it plainly erroneous or inconsistent with the regulation or underlying statute.[3]

Although some courts have rejected HUD's interpretation and continue to follow Culpepper III, the vast majority have accepted the HUD test endorsed by Glover and Schuetz. *See* McCrillis v. WMC Mortgage Corp., 133 F.Supp.2d 470, 474-75 (S.D. Miss. 2000) (listing cases prior to the HUD 2001 Policy Statement). We find Glover and Schuetz persuasive on the merits as well. The difference between the two tests can best be seen through their underlying presumptions. Under Culpepper III, brokers bear the burden to prove their compensation was related to services they performed. The presumption is that if the amount of the fee is not directly related to specific services, it must be a kickback. Under the HUD test, the burden is on the borrower to show that the broker's compensation was excessive. The presumption is that so long as brokers receive only reasonable market value for their services, they have no

---

[3] We also agree with Glover that given HUD's expertise in this area, regardless of the level of deference, its policy reflects "a reasoned view of a responsible agency which is consistent with the statute and the regulation and which constitutes a body of experience and informed judgment that this court may look to as determinative authority." 283 F.3d at 962-63.

incentive to direct referrals. YSPs, by definition, are computed based on interest rates. Requiring brokers to show a direct nexus with particular services will make it nearly impossible for any YSP to pass muster. We do not believe Congress intended RESPA to specifically prescribe which formulae brokers and lenders can and cannot use to compute their compensation arrangements. And the reasonableness prong of HUD's two-step test ensures that total compensation is not excessive. Such a lenient standard certainly has is shortcomings. As <u>Culpepper III</u> and its progeny aptly point out, it ignores the parties' intent and permits *post hoc* explanations of fees. But HUD's interpretation is consistent with the statutory purpose and it is entitled to deference.

Applying HUD's test to the present case, it is undisputed that Amerihome offered compensable services. It helped plaintiffs complete the application, collected and verified information, counseled and educated plaintiffs, analyzed plaintiffs' income and debt, arranged appraisals and inspections and provided disclosures. There is scant evidence in record to assess whether Amerihome's total compensation here is reasonable in the Chicago market. Amerihome submits affidavits from its own officers stating that 2.5% is typical in their market. Self-serving affidavits are not the most persuasive evidence, but they are admissible because these officials would have knowledge of local industry norms. Plaintiffs' purported evidence, on the other hand, tells us nothing. All they have proffered are generic articles about mortgage broker compensation that allude to 1-2% as a typical range. These articles are not specific to the Chicago market or to FHA loans. We are also mindful of other cases where courts have found comparable fees as not excessive. *See, e.g.*, <u>McCrillis</u>, 113 F.Supp.2d at 474 (finding that 2.3% total compensation was reasonable); <u>Lee v. N.F. Investments, Inc.</u>, 2000

U.S. Dist. LEXIS 20712 at *14 n.1 (E.D. Mo. Mar. 15, 2000) (finding 3.35% was reasonable).

Many of the opinions permitting RESPA referral fee cases to proceed are on motions to dismiss, where plaintiff need only allege that the broker's compensation was excessive. *See, e.g.,* Watson, 2002 WL 598521 at *5. By the summary judgment stage, however, plaintiffs must produce some evidence sufficient to create a material factual question. They have not. Self-serving affidavits, when unrebutted, can support summary judgment. *See* Schmitz v. Aegis Mortgage Corp., 48 F.Supp.2d 877, 883-84 (D. Minn. 1999). Under the HUD test the burden is on plaintiffs to provide evidence that the broker's compensation was unreasonable. Because plaintiffs have not provided a single creditable piece of evidence tending to show that defendant's compensation deviated from market norms, we must conclude that they were reasonable.

## The State Law Claims

Our jurisdiction over counts III-VI, the ICFA, fiduciary duty and inducement claims, was predicated on the federal RESPA claims. *See* 28 U.S.C. §1367(a). Having disposed of all claims over which we had original jurisdiction, we decline to exercise our supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. §1367(c)(3).

## CONCLUSION

For the foregoing reasons, we grant defendants' motion for summary judgment with respect to counts I and II, and dismiss the state law claims for lack of subject matter jurisdiction.

JAMES B. MORAN
Senior Judge, U. S. District Court

Aug. 23, 2002.